**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DR. FAUZIA KHAN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 22 C 4406 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| COUNTY OF COOK, d/b/a JOHN H., | ) | |
| STROGER, JR., HOSPITAL OF COOK | ) | |
| COUNTY, DR. JORELLE ALEXANDER, | ) | |
| and DR. KAHINA CALDWELL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

"But discovery, like all matters of procedure, has ultimate and necessary boundaries."

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947)

"The discovery rules are not an excursion ticket to an unlimited, never-ending exploration of every conceivable matter that captures an attorney's interest. Parties are entitled to a reasonable opportunity to investigate the facts-and no more."

*Vakharia v. Swedish Covenant Hosp.*, 1994 WL 75055, at *2 (N.D. Ill. 1994)(Moran, J.).[1]

### INTRODUCTION

In its simplest form, this is a case about a dentist, Dr. Fauzia Khan, who was employed at the

Cook County jail, and was fired for alleged malfeasance – a charge vigorously denied by Dr. Khan.

In her view, the case is a good deal more complex and sinister than the defendants have

---

[1] Sadly, "[d]elay and excessive expense now characterize a large percentage of all civil litigation. The problems arise in significant part, as every judge and litigator knows, from abuse of the discovery procedures available under the Federal Rules." *Ingalls Shipbuilding, Inc. v. United States*, 857 F.2d 1448, 1450 (Fed. Cir. 1988). *See also Delta Air Lines, Inc. v. August*, 450 U.S. 346, 363 n. 1 (1981) (Powell, J., concurring) (the "cost of litigation in this country – furthered by discovery procedures susceptible to gross abuse – has reached the point where many persons and entities simply cannot afford to litigate even the most meritorious claim or defense.").

acknowledged. She insists she was fired because of the defendants' claimed racial bias – Dr. Khan is Muslim and of Indo-Pak descent – not because of any deficiency in her professional performance. Dr. Khan, contends that when she complained to her superiors about what she considered to be a hostile work environment and an inappropriately heavy work load, she was belittled and her employment ultimately terminated. She alleges that she was "escorted out of the building" by law enforcement as if she "had committed some sort of crime." This suit followed. [Dkt. #1].

When the present discovery dispute could not be resolved through the discussions required by Local Rule 37.2, Dr. Khan filed the instant motion to compel, contending that the defendants have failed to honor their basic discovery obligations under Rule 26, of the Federal Rules of Civil Procedure, by refusing to comply with a miscellany of what she contends are proper – even "modest" – requests for production. [Dkt. #73 at 14-15]. The defendants have a very different view of things and insist there has been perfect fidelity to their obligations under the Rule. [Dkt. #76].

## I.

## THE HISTORY OF THE ADMINISTRATIVE PROCEEDINGS INVOLVING DR. KHAN AND THE EXECUTIVE MEDICAL STAFF OF STROGER HOSPITAL

An understanding of the present dispute requires a review of the somewhat complicated history antedating the filing of Dr. Khan's Complaint. The defendants contended that Dr. Khan's performance as a dentist at the Cook County Jail was deficient – a claim she vehemently denied – and that as a result she was placed on a Performance Improvement Plan in March, 2019. Dr. Khan contends that although she successfully completed the Plan's requirements in June, 2019, she was nonetheless issued a Focused Professional Performance Evaluation ("FPPE") by Dr. Alexander on June 13, 2019. Dr. Alexander had claimed that plaintiff was an "immediate danger to patients." On

September 27, 2019, Dr. Khan was notified that her clinical privileges were suspended pursuant to the Bylaws of the John H. Stroger, Jr. Hospital of Cook County. Dr. Khan's summary suspension was referred to the Hospital's Review Committee, which, on January 3, 2020, issued a Report claiming to have found multiple infractions regarding Dr. Khan's dental practice and her claimed unwillingness to modify her behavior despite repeated complaints about her. The Peer Review Committee of the Hospital voted to sustain the summary suspension, subject to recommended corrective action, including continuation and expansion of Dr. Khan's Focused Professional Performance Evaluation, "if feasible," and a program of continued monitoring.

The Peer Review Committee's recommendation was submitted to the Executive Medical Staff and reviewed at the Committee meeting on February 11, 2020. Dr. Khan appeared at the meeting and addressed the Committee, which rejected the recommendation and instead recommended termination of plaintiff's staff and clinical privileges. Dr. Khan was notified of the Committee's recommendation and of her right to request a hearing under the Bylaws. She did so on March 17, 2020, and a Hearing Committee was convened. The Committee conducted pre-hearing conferences to consider issues relating to discovery, stipulations, motions, and other procedural matters. The defendants contend that Dr. Khan was afforded complete discovery in proceedings before the Hospital Committee, and that Dr. Khan was permitted to object in regard to discovery matters considered by the Committee. The Board of Directors, after a multi-day hearing, adopted the EMS Committee's decision and terminated Dr. Khan's employment. This suit followed.

Not surprisingly, discovery in this case, like "the course of true love, [has been anything but] smooth." Shakespeare, *A Midsummer Night's Dream,* Act I, Scene 1. In the defendants' view, Dr. Khan has received in discovery everything to which she is entitled, including everything considered

3

by the Peer Review Committee. [Dkt. #76 at 3]. They have, however, refused to produce certain materials requested by Dr. Khan in this case on the basis of relevancy, over-breadth, and privileges and limitations purportedly imposed by the Illinois Medical Studies Act. Finally, according to Dr. Khan, even where the defendants have agreed to produce responsive documents, the production has been incomplete and deficient. Unfortunately, the obligatory conference under Local Rule 37.2 failed to resolve the disputes.

## II.

## THE CURRENT DISCOVERY CONTROVERSY

### A.

### Dr. Khan's Contentions

Dr. Khan charges that the defendants have denied her the basic discovery to which she contends she is entitled under the Federal Rules of Civil Procedure and which, she insists, is necessary to proving her claim that racial bias, not incompetency, was the real reason she was fired. That discovery allegedly includes the names of the experts who supposedly opined in proceedings before the Hospital committees that there were breaches by Dr. Khan of relevant standards of patient care, and the Report of an "expert," who supposedly offered the opinion that there were no breaches of conduct and standards of patient care by Dr. Khan, and who, allegedly, was then removed from the Committee deciding the issue of Dr. Khan's continued employment. The defendants insist that Dr. Khan has received in discovery everything the Committee considered, including copies of all of the dental records considered by the Peer Review Committee, and paper copies of relevant X-ray

images. [Dkt. #76 at 3].[2]

While insisting that Dr. Khan received in discovery in this case everything considered by the Peer Review Committee that recommended her firing, [Dkt. #76], the defendants have refused to comply with what they contend are overly broad and otherwise improper discovery requests, including that which sought discovery of information spanning the last decade involving the hearings of all "practitioners" before the Committees – not merely those involving dentists. [Dkt. #73 at 14-15]. Dr. Khan has called this ten year period "relatively modest in comparison to the twenty since the termination of [a] Dr. Renta under" what Dr. Khan contends were "similar circumstances." [Dkt. #73 at 15]. With all deference, and as will be discussed in greater detail, Dr. Khan's argument and the basis on which it rests is not particularly compelling.

Throughout her Motion to Compel Discovery, Dr. Khan uses the word "practitioners," without defining it. [Dkt. #73 at 2, 9, 10, 15]. Webster's Dictionary defines "practitioners" broadly as "one who practices a profession." https://www.merriam-webster.com/dictionary/practitioner?src= search-dict-box. The term, as used by Dr. Khan, is thus broad enough to include doctors, dentists, nurses, and any other "professional" who worked in the Hospital. Fairly read, Dr. Khan's discovery request sought a decade's worth of all proceedings before the relevant Hospital committees and involving not merely those pertaining to dentists.

---

[2] But production in the Hospital proceedings does not automatically or necessarily excuse obligations the defendants may have in discovery under the Federal Rules of Civil Procedure in the instant case. Why *paper* copies of critical X-rays, the originals of which were produced in discovery in proceedings before the Committee, would suffice to satisfy the defendants' discovery obligations under the Federal Rules of Civil Procedure in this case is not immediately apparent..

**B.**

**The Defendants' Objections To Plaintiff's Discovery Requests**

Dr. Khan issued her first set of document requests and interrogatories in this case on March 22, 2023 and a second supplemental set nine months later. The defendants have emphasized that their discovery response consisted of a combined PDF of more than 6,600 pages. They also deny the charge that they combined all the materials in discovery, thereby, in Dr. Khan's view, making "review untenable."

Additionally, she contends that the Illinois Medical Studies Act privilege does not apply in this case. Finally, the defendants' claim that certain materials requested in discovery are irrelevant is, according to Dr. Khan, "myopic" and "absurd," and that the withheld information is "precisely what [she] needs in order to prove her allegations." [Dkt. # 73 at 6]. It is also claimed that only when her counsel threatened to bring a motion to compel, did Cook County Hospital promise to provide a privilege log identifying what documents had been withheld.

**III.**

**THE ILLINOIS MEDICAL STUDIES ACT PRIVILEGE DOES NOT APPLY
IN AN ACTION ASSERTING CLAIMS UNDER TITLE VII**

Cook County Hospital's refusal to comply with certain demands for discovery by Dr. Khan is based in part on the Illinois Medical Studies Act, the purpose of which is "to ensure that members of the medical profession will effectively engage in self-evaluation of their peers in the interest of advancing the quality of health care." *Johnson v. Dart*, 309 F. Supp. 3d 579, 581 (N.D. Ill. 2018). The Act is premised on the belief that, absent the privilege, physicians might be reluctant to sit on peer review committees and engage in frank evaluations of their colleagues. *Sevilla v. United States*,

852 F. Supp. 2d 1057, 1060 (N.D. Ill. 2012). Notwithstanding those laudatory goals, the Illinois Act

is not an obstacle to discovery in the instant case.

## A.

### Peer Review Materials

State legislatures throughout the Nation have concluded that absent a "peer review" privilege,

doctors will be discouraged from participating in the full and frank expression of opinion thought

to be essential to maintaining and advancing the quality of medical care. *Sevilla*, *supra.* Illinois is

no exception. The Illinois Medical Studies Act ("IMSA") provides:

> § 8-2101. Information obtained. All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, … or committees of licensed or accredited hospitals or their medical staffs, including Patient Care Audit Committees, Medical Care Evaluation Committees, Utilization Review Committees, Credential Committees and Executive Committees, or their designees (but not the medical records pertaining to the patient), used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services, except that in any health maintenance organization proceeding to decide upon a physician's services or any hospital or ambulatory surgical treatment center proceeding to decide upon a physician's staff privileges, or in any judicial review of either, the claim of confidentiality shall not be invoked to deny such physician access to or use of data upon which such a decision was based.

35 ILCS 5/8-2101.

The Illinois Act's purpose is to permit medical professionals to discuss cases without fear

that their internal discussions will be used against them in a medical malpractice case. *Johnson v.*

*Dart,* 309 F.Supp.3d 579, 581 (N.D.Ill. 2018); *Levitin v. Nw. Cmty. Hosp.,* 2014 WL 5510949, at

*3 (N.D. Ill. 2014). Hence, the Act provides that the "peer review privilege" "shall not be invoked

to deny... physician access to or use of data upon which a decision [regarding staff privileges] was based." 735 ILCS 5/8-2101, 2102. *See Sevilla v. United States*, 852 F. Supp. 2d 1057, 1060 (N.D. Ill. 2012); *Chicago Tr. Co. v. Cook Cnty. Hosp.*, 298 Ill. App. 3d. 396, 402 (1st Dist. 1998).

The fact that the Illinois Medical Studies Act creates a privilege protecting certain kinds of communications is not determinative of the permissibility of the discovery requests in this case. Generally, federal courts will recognize state privileges so long as that recognition does not result in a substantial cost to federal substantive and procedural policy. *Memorial Hospital for McHenry County. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981). *Accord Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 932 (7th Cir. 2004). In *Memorial Hospital for McHenry County*, the plaintiff contended that the defendant used hospital committee proceedings to deny him staff privileges allegedly in furtherance of claimed unlawful restraint of trade. The Seventh Circuit held that denial of access to information from the peer review process pursuant to the Illinois Act would improperly preclude the plaintiff from establishing the charged claim. *See Shadur*, *supra*, 664 F.2d at 1061; *Johnson v. Cook County*, 2015 WL 5144365, at *3 (N.D. Ill. 2015). Indeed, comparable cases have refused to recognize the state-created privilege in circumstances similar to those presented by this case because its application would, it was thought, compromise federal policy without advancing Illinois policy interests. *See Shadur,* 664 F.2d at 1061-63; *Levitin*, 2014 WL 5510949, at *3.

Thus, Dr. Khan insists that the Act – and thus the privilege it creates – is not applicable in this case and cannot serve as a basis for any denial of discovery since, according to the Complaint's allegations, the basis for terminating her staff privileges was merely a "pretext" to conceal a course of unlawful discrimination. *See, e.g.*, *Shadur, supra,* 664 F.2d at 1061; *Johnson, supra*, 2015 WL 5144365, at *3. In deciding whether the Illinois Medical Studies Act applies here, two fundamental

8

principles must be kept in mind. First, evidentiary privileges are strictly and narrowly construed because they obstruct the fact-finding function. *Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 144 (2003); *Hamdan v. Indiana Univ. Health Northshore Hosp., Inc.*, 880 F.3d 416 (7th Cir. 2018); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 2019 WL 2774126, at *3 (N.D. Ill. 2019). Second, in deciding the applicability of a privilege, a court must, of course, take into account the particular factual circumstances of the case and the importance of the relationship or policy sought to be furthered by the privilege, and consider the likelihood that recognition of the privilege would, in the factual setting of the case, protect that relationship. *Shadur*, 664 F.2d at 1061. Consequently, automatic application of any privilege, regardless of attending circumstances, is improper. As the Seventh Circuit has emphasized, "recogniz[ing] hospital disciplinary proceedings as privileged, regardless of the purpose for which disclosure is sought" would effectively grant such committees "immunity from prosecution" for anything said or done in those proceedings – a result Illinois law – and federal law – refuse to endorse. *Shadur*, 664 F.2d at 1063.

Application of these principles to a claim of "peer review" privilege in a Title VII case has resulted in a determination that evidence considered by a Committee involved in a challenged decision had to be disclosed since that evidence lay "at the heart" of the claim. *Levitin*, 2014 WL 5510949, at *3. *Arsberry v. Wexford Health Sources, Inc.*, 2021 WL 5232733, at *9 (N.D. Ill. 2021) stressed that "the privilege arising under the [Illinois Medical Studies Act] is not binding on [federal courts] where Plaintiff's principal claims arise under 42 U.S.C. § 1983." *See also Shadur*, 664 F.2d at 1061; *Green v. Meeks*, 2023 WL 1447817, at *3 (S.D. Ill. 2023); *Daniels v. Jeffreys*, 2023 WL 4733474, at *3 (C.D. Ill. 2023); *Jackson v. Wexford Health Sources, Inc.*, 2023 WL 4352068, at *4 (S.D. Ill. 2023). *See also Hamdan v. Ind. Univ. Health N. Hosp., Inc.*, 880 F. 3d 416, 421 (7th Cir.

2018). These cases lead to the firm conclusion that the privilege created by Illinois law and relied on by the defendants in this case is not a bar to Dr. Khan's discovery requests.

## B.

### Dr. Khan's Discovery Requests

Document Request Nos. 10, 12 and 13: Dr. Khan sought documents relating to fifteen "specific clinical cases, inclusive of radiographic reviews," on which the Peer Review Committee conducted its review. Dr. Khan sought discovery of the medical records for these cases from Cerner and Dentrix, and any communications regarding any "expert review opinion" offered in support of the Hospital's firing of Dr. Khan. Cook County Hospital has refused to provide the materials, incorrectly insisting they were protected by the Illinois Medical Studies Act and HIPAA. Any turnover may be deemed at this juncture subject to an appropriate Confidentiality Order. But refusal to comply with that discovery request is improper.

There was also the formulaic objection by the defendants that the requests were "overly broad, unduly burdensome, disproportionate to the needs of the case," and were "neither relevant [nor] reasonably likely to lead to the production of admissible evidence." [Dkt. #73 at 7]. These kinds of overly generalized, undifferentiated, undeveloped objections are tantamount to no objection at all, as every court considering what are often termed "lightening objections" has held. *See, e.g., Donald v. City of Chicago*, 2022 WL 621814, at *2 (N.D. Ill. 2022); *Kinon Surface Design v. Hyatt Int'l Corp.,* 2021 WL 3511312, at *3 (N.D. Ill. 2021); *Extended Care Clinical v. Scottsdale Ins.*, 2021 WL 2894163, at *2 (N.D. Ill. 2021)(and cases cited). They are not an appropriate basis on which to base a discovery objection.

The defendants' assertions of privilege under the Illinois Medical Studies Act and HIPAA are rejected for the reasons discussed above. These records were claimed as the basis for the Peer Review Committee's decision to fire Dr. Khan, and thus their relevance here is as obvious as it is undeniable. These materials must be provided to Dr. Khan within 14 days to the extent they have not already been provided. Defendants are also ordered to produce any materials submitted to the Committee in Dr. Khan's case regardless of whether or not the information was reviewed favorably or unfavorably by the Committee and whether or not it was formally relied on by the Committee in its formal decision regarding Dr. Khan.

<u>The Cerner and Dentrix Medical Records</u>:

The defendants have represented that during discovery in this case, Dr. Khan was given access to the 17 patient clinical charts – redacted to eliminate identifying patient information – that were used in the Peer Review Committee's and Executive Medical Staff Committee's proceedings and which, it is contended, underlay their recommendations and findings. Nonetheless, Dr. Khan seeks production of the complete Dentrix and Cerner records for each of these 17 patients. Cerner is the electronic medical record system used for patients at the Cermak facility where Dr. Khan was employed. Dentrix is the system used to maintain dental records. [Dkt. #76 at 7]. The records should be produced, subject to the provisions of any appropriate Confidentiality Agreement or Order.

<u>Interrogatory Request Nos. 2, 3, 4, 5, 7 and 8</u>: According to Dr. Khan, Cook County Hospital has refused to identify the experts it is claimed conducted an "independent" expert review of the seventeen cases considered by the Peer Review Committee. And, it is claimed that the defendants have refused to identify the substance and basis of the expert opinions purportedly utilized by the Committee even though they were claimed to be integral to the Committee's ultimate

decision. The defendants' objection to the above requests were that they were irrelevant and barred by Illinois Medical Studies Act. Those objections are not persuasive, and the information sought shall be produced within 14 days to the extent it has not already been provided. It may be produced under an appropriate Confidentiality Order.

Document Request Nos. 32 and 33: Dr. Khan requested "[a]ll drafts, memoranda, and reports authored by Dr. James Murphy regarding Dr. Khan and her treatment of patients," and "all communications regarding" that report. Cook County Hospital contended that these requests sought information protected by HIPAA, and that, in any event, were, according to the defendants' formulaic objection, "overly broad," disproportionate to the needs of the case, insufficiently descriptive, and sought documents "that are neither relevant or reasonably calculated to lead to the production of admissible evidence." These sorts of undifferentiated, unexplained, general objections are tantamount to no valid objections at all. *See* discussion *supra*. Therefore, the materials sought must be produced within the next 14 days.

A Report that allegedly exonerated Dr. Khan, but, it is claimed, was disregarded by the Committee Chair, is "relevant" to whether the Committee's decision was intentionally discriminatory, as claimed by Dr. Khan. So too with Dr. Murphy's Report regarding Dr. Khan and "communications regarding" that Report – which Dr. Murphy said he gave to the Chair of the Peer Review Committee, but which the Chair apparently denied receiving. To merely conclude, as do the defendants, that the sought-after discovery would be "disproportionate" to the needs of this case is effectively to say nothing of legal significance. Reasoned and incisive arguments, not merely tendentious conclusions, are required to support a claim of disproportionality – or any claim for that matter. *See Massuda v. Panda Express, Inc.*, 759 F.3d 779, 783-84 (7th Cir. 2014); *Lee v. Chicago*

*Youth Centers*, 69 F.Supp.3d 885, 888 (N.D.Ill. 2014)(collecting cases).

The same is true as to claims that the defendants are hiding evidence and thus have failed to comply with discovery requests. But, saying that production is so scanty that there must be more is insufficient to warrant the granting of a Motion to Compel. *See, e.g., Gross v. Chapman*, 2020 WL 4336062 *2 (N.D.Ill. 2020); *Tijerina v. Stanley*, 2019 WL 1396964, *4 (E.D.Tex. 2019); *Kendall v. Whig Enterprises, LLC*, 2016 WL 898569, *4 (S.D.Ohio 2016); *Harris v. Koenig,* 271 F.R.D. 356, 370 (D.D.C. 2010); *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008). Speculation is never a substitute for proof, and merely insisting that there must be more information than has been produced in discovery is not adequate. *United States v. Landry*, 257 F.2d 425, 431 (7th Cir. 1958); *Metcalf v. Ross,* 2021 WL 1577799, *2-3 (N.D.Ill. 2021). *See also Belcastro v. United Airlines, Inc.*, 2019 WL 7049914, at *2 (N.D. Ill. 2019)("Mere suspicion or speculation that an opposing party may be withholding discoverable information is insufficient."). "Certitude is not the test of certainty. We have been cocksure of many things that were not so." Holmes, *Natural Law* (1918) 32 Harvard Law Review 40, 41. Here, as in any other context, merely "saying so does not make it so." *See, e.g., Guerrero v. BNSF Ry. Co.*, 929 F.3d 926, 929 (7th Cir. 2019); *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010); *Stromberg Motor Devices Co. v. Zenith Carburetor Co.*, 254 F. 68, 69 (7th Cir. 1980).[3]

The defendants have also claimed, quite conclusorily – and thus quite improperly – that the requested discovery would be "disproportionate to the needs of the case." But, as discussed earlier,

---

[3] Mere assertions, without more, in a motion or brief that something is or is not so, is not decisive. *INS v. Phinpathya*, 464 U.S. 183, 188 n. 6 (1984); *Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015); *Malik v. Holder*, 546 F. App'x 590, 593 (7th Cir. 2013); *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir. 2009). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018).

"proportionality," like other concepts, requires a common sense and reasoned assessment, not merely an unexplained, partisan conclusion. *See, e.g., Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary indicated that "proportionality" under Rule 26(b) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." *Id.* As the Chief Justice stressed: "[t]he key here is careful and realistic assessment of actual need...." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016). *See also* Paul Grimm, *Introduction: Reflections on the Future of Discovery in Civil Cases*, 71 Vanderbilt L.Rev. 1775 (2018); Linda Simard, *Seeking Proportional Discovery*, 71 Vanderbilt L.Rev. 1919 (2018).

In sum, refusing to honor requests for discovery of documents considered by the Hospital Committee merely by asserting that discovery of those documents would not be "proportional" to the needs of the case is unpersuasive and unavailing. To the extent documents were submitted to any Hospital Committee involved in the proceedings related to Dr. Khan, they must be produced within 14 days – if they have not already been.

Document Request No. 34: Dr. Khan sought documents relating to the issuance of her PIP, including drafts, memoranda, meeting minutes, transcripts, recordings, and communications from Drs. Caldwell and Alexander. The objection to this request was the unpersuasive, formulaic assertion that the request was "overly broad, unduly burdensome, disproportionate to the needs of the case, fails to describe the documents sought with reasonable particularity, and seeks documents that are neither relevant nor reasonably calculated to lead to the production of admissible evidence." This conclusory objection is ineffectual. *See supra*. Responsive documents, if not already produced,

are to be produced within the next 14 days.

The defendants have also represented that they do not have responsive documents. While Dr. Khan finds it inconceivable that the Hospital would issue a PIP without a basis and in the absence of supportive documentation, her conclusion that "either CCH has not appropriately searched for that evidence, or it has destroyed it," while not decisive, ought not be dismissed peremptorily. There is a certain logic underlying Dr. Khan's incredulity.[4] The defendants are ordered to immediately conduct a further search for the documents requested. Should the defendants persist in claiming that there are no responsive documents, Dr. Khan may, if she chooses, take an appropriate three hour deposition regarding the defendant's response to this discovery request.

Document Request No. 61: The Hospital has refused to produce the W2s issued to Dr. Khan on the ground that she has previously received them. This is an instance where the book is not worth the candle. The defendants' objection is overruled, and the requested documents are to be produced within the next 14 days. If this constitutes a second production of the same material, so be it.

Finally, Dr. Khan contended that there were "significant technical deficiencies" with the documents actually produced by the defendants that she contends "obscure their substance," such as: supposedly "incomplete" email chains, emails that are allegedly missing attachments, claims of privilege which are argued to be inapplicable, and production "without electronically stored information." [73 at 10]. If necessary, counsel are to immediately have a Local Rule 37.2 conference

---

[4] It is perhaps arguable that if the documents sought by Dr. Khan do not, in fact, exist, their absence, unless otherwise satisfactorily explained, would perhaps be some evidence supportive of Dr. Khan's central thesis in this case that she was fired not because she was not a competent dentist, but because of her lineage. But that, of course, is an argument for the jury if it is deemed otherwise appropriate and warranted by the trial judge. While nothing said herein should be taken as any indicator regarding the truthfulness or accuracy of Dr. Khan's allegations, she is entitled to appropriate discovery to sustain, if she can, those allegations.

to discuss what particular documents are claimed to be affected. Hopefully, this conference will achieve a better result than its predecessor.

## C.

### Copies of Original X-Rays

Dr. Khan does not dispute that she had access to copies of the x-ray films used at her original hearing. And, at least according to the defendants, there does not seem to be any dispute that she had the opportunity to address discovery issues before the Hearing Committee, as well as the opportunity to explain what additional information she thought might be revealed through medical records. In light of the fact that Dr. Khan was apparently permitted to inspect the original x-ray films available to the Committee, they should be produced or made available for Dr. Khan's inspection and reproduction in this case.

## D.

### Patient Records

Dr. Khan seeks production of copies of redacted versions of patient records, with appropriate additional identifying information. The defendants contend that the records of Dr. Khan's Medical Staff hearing make it clear that she was able to identify each of the seventeen patients referred to during her hearing. The charts were, according to the defendants, identified by exhibit number and were referred to in the hearing record. According to the defendants, Dr. Khan received all of the information that was used in the course of her Peer Review hearing. Thus, it would seem that production in this case might be duplicative of information Dr. Khan had. But she is nonetheless entitled to it under the applicable Federal Rule of Civil Procedure. The requested information should be produced. However, if the materials are in Dr. Khan's possession, it would

16

seem the defendants and Dr. Khan can agree that what she previously received is exactly what the defendant would otherwise provide in this case – if, in fact, that is so.

## IV.

### DR. KHAN'S REQUESTED DISCOVERY FOR DOCUMENTS SPANNING THE LAST DECADE IS EXCESSIVE AND UNWARRANTED AND IS NOT SUPPORTED BY THE CASE ON WHICH SHE RELIES

Plaintiff's Second Set of Requests for Production and Second Set of Interrogatories sought vast amounts of information, including, but not limited to, every document and communication regarding every "practitioner" brought before the Peer Review and EMS Committees over the past decade. She contends that the oceanic scope of this request is warranted and necessitated by her *Monell* claim.[5] During the parties' Local Rule 37.2 conference, defendants' counsel inquired whether Dr. Khan's lawyers would consider narrowing the requests to what they termed a "more reasonable" period. Plaintiff's counsel responded that they would consider the matter, but, unfortunately, they apparently never did. Dr. Khan's insistence on a decade's worth of discovery is, under the circumstances presented by this case, excessive and thus improper. By not limiting the requests to information relating to those "professionals" involved who were "similarly situated" to Plaintiff, the request is arguably excessive and overbroad. *See Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003).

But more importantly, neither the allegations in the Complaint or Amended Complaint justify Dr. Khan's extensive request for discovery. Courts have routinely rejected similar,

---

[5] The Amended Complaint alleges in ¶¶ 172-175 that CCH had a practice of identifying troublesome practitioners and summarily suspending them based on alleged violations of the standard of care when, in fact, the charges were a mere pretext to conceal the real reasons underlying the suspensions. Dr. Khan's arguments in support of the expansive discovery she seeks are not persuasive.

temporally expansive claims. *See, e.g., Sopron v. Cassidy*, 2023 WL 6213713 (N.D.Ill. 2023); *Washington v. Baltimore Police Dept.*, 2020 WL 6277276 (D.Md. 2020); *Bost v. Wexford Health Sources, Inc.*, 2020 WL 1890506 (D.Md. 2020); *Terry v. Cnty. of Milwaukee*, 2018 WL 2567721, at *10 (E.D. Wis. 2018); *Kitchen v. Burge*, 2012 WL 13388763, *5 (N.D.Ill. 2012); *Ojeda-Beltran v. Lucio*, 2008 WL 2782815, *4 (N.D.Ill. 2008).

*Green v. Meeks*, 2021 WL 3631264, at *4 (S.D. Ill. 2021), on which Dr. Khan relies, was not an employment discrimination case, but a case involving a claim of inadequate care by a prison health care provider. Even in employment cases involving a claimed pattern of discrimination, discovery is limited to "similarly situated" employees. *See, e.g., Cain v. Elgin, Joliet & E. Ry.*, 2005 WL 8170023, at *5 (N.D. Ind. 2005). The kind of oceanic demand exemplified by Dr. Khan's request for ten year's worth of information relating to any "practitioner" who has been accused of misconduct underlies the all too common refrain that much of modern day discovery is "a monster on the loose. ... 'Pre-trial proceedings have become more costly and important than trials themselves," *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986), requiring a disproportionate and all too often needless expenditure of time and resources, by litigants, lawyers, and the court. Sadly, there is much truth to the common lament that "[p]rotracted discovery [is] the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir. 2000).[6]

---

[6] Unfortunately, the success of judicial supervision in checking discovery abuse has "been on the modest side." *Bell Atlantic v. Twombly*, 550 U.S. 544, 559 (2007). But all are agreed that more extensive judicial involvement is necessary. *See also* Virginia E. Hench, *"Mandatory Disclosure and Equal Access to Justice: The 1993 Federal Discovery Rules Amendments and the Just, Speedy and Inexpensive Determination of Every Action,"* 67 Temple L.Rev. 179, 232 (1994); Frank H. Easterbrook, *"Discovery as Abuse,"* 69 B.U. L.Rev. 635, 639 (1989).

While *Monell* and related claims, if otherwise proper, can result in extensive discovery, *Monell* claims do not automatically justify the kind of expansive discovery sought by Dr. Khan. It is not a sufficient answer to say that merely because Cook County Hospital was found to have violated a plaintiff's rights twenty years ago in *Renta v. Cnty. of Cook*, 735 F. Supp. 2d 957, 978 (N.D. Ill. 2010), discovery spanning the last decade is proper in this case, is "modest," and is required by *Monell*. Significantly, the district court in *Renta* granted summary judgment to the Hospital in connection with the *Monell* claim, 735 F.Supp.2d at 978, a point overlooked by Dr. Khan.[7] Thus, the fact that Dr. Renta was the "victim" of an isolated act of misconduct does not justify Dr. Khan's insistence on a decade's worth of discovery pursuant to *Monell*. Phrased differently, Dr. Khan's claim that *Renta* shows a two decade's old pattern of institutional misconduct is plainly unsupported by the case on which she relies. It is beyond debate that a plaintiff like Dr. Khan must show that a claimed *Monell* violation occurred as a result of a *municipal policy,* rather than as the result of random or isolated misconduct by a single *actor*, which, in essence, is all that was found to have occurred in *Renta. See Thomas v. Cook County Sheriff's Dept.*, 604 F.3rd 293, 303 (7th Cir. 2010); *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 130 (2nd Cir. 2004); *Darko v. City of Chicago*, 2024 WL 2209675 (N.D.Ill. 2024); *Byrd v. MTA*, 2015 WL 4546718, *3 (E.D.N.Y. 2015). In other words, the fact that something illicit or improper occurred in an isolated case twenty years ago is not a sufficient basis for

---

[7] Dr. Khan's allegation that "[t]he EMS and CCH generally, have a long history of using the Peer Review Process, and summary suspension, to silence health care providers within the Cook County system that speak out against department chairs, leadership, or internal practices that might draw negative attention to CCH" is thus not supported by *Renta* [Dkt. #40 at ¶¶ 172-175], which held "[d]efendants' motion is granted on: Counts I in its entirety; Counts II, IV and V to the extent that Renta seeks to impose Monell liability on the County." *Renta*, 735 F. Supp. 2d at 978.

concluding that a ten year period of discovery under *Monell* is required – or proper – in this case. In short, *Renta* does not support the present claim for discovery spanning the last ten years, and *Renta* is the basis on which Dr. Khan has wagered her all.

Allegations of misconduct are all too common. But if allegations alone were all that is necessary to warrant the kind of broad based discovery sought by Dr. Khan, discovery would never end. It bears repeating that "[t]he discovery rules are not a ticket to a never ending exploration of every matter that piques an attorney's interest." *Vakharia, supra.* Thus, with all deference, we cannot agree with Dr. Khan that the ten year scope of discovery being sought is "relatively modest" or that her demand is supported by *Renta*. [Dkt. #73 at 16].

That there was a single, isolated case of noninstitutional misconduct occurring more than twenty years ago does not justify, let along require, the kind of *Monell* discovery demanded by Dr. Khan. Her insistence that she is entitled to discovery involving every practitioner, who, over the last decade has been brought before a committee of the Hospital constitutes a classic "fishing expedition," which is impermissible in discovery. *See, e.g., Higgason v. Hanks*, 54 F.App'x 448, 450 (7th Cir. 2022); *MAO-MSO Recovery II, LLC v. State Farm*, 994 F.3d 869, 877 (7th Cir. 2019); *Smith v. OSF Healthcare System*, 933 F.3d 859, 870 (7th Cir. 2019); *Cotton v. Milwaukee Area Tech. College Dist. Bd. of Directors*, 756 F.Appx. 628, 630 (7th Cir. 2019); *E.E.O.C. v. Harvey L. Walner & Assoc.*, 91 F.3d 963, 971 (7th Cir. 1996). *See also Bierk v. Tango Mobile, LLC*, 2021 WL 1837376, *3 (N.D.Ill. 2021).

20

## A.

## The "Technical" Deficiencies

Dr. Khan also contends that the defendants have not addressed what they have characterized as "technical deficiencies" – a charge denied by the defendants. As an illustration, defendants refer to an email chain identified as DEF000427 - 429, which they say was produced in complete form as DEF000453. According to the defendants, the attachments for DEF000057 - 63 were provided at DEF007170 - 7237, DEF006981 - 7023, DEF007204 - 7237, DEF007152 - 7164, DEF007126 - 7145, and DEF7146 - 7148. Documents provided with "privileged and confidential" headers were produced in the form that they were used in evidence in the course of Plaintiff's Medical Staff hearing. All of Defendants' documents are claimed to have been provided in text-searchable electronic form. The documents referred to above were provided prior to the Local Rule 37 conference, and these issues were allegedly not discussed during the conference. Defendants insist that these issues had been resolved prior to the conferences. Should Dr. Khan's counsel desire to discuss these matters, defendants' counsel have represented that they are willing to address any issues that might remain. Counsel are urged to revisit these issues in a further – hopefully productive – conference.

Dr. Khan has argued that in its Report, the Peer Review Committee stated that it had completed an "independent expert review of fifteen specific clinical cases cited in the referral and obtained a peer review opinion about two other cases relevant to the summary suspension." It is alleged that this review was not provided to Dr. Khan, notwithstanding her request, and that Cook County Hospital did not identify who provided the Peer Review Opinion. Finally, Dr. Khan insists that despite her requests, the material was withheld on the authority of the Illinois Medical Studies

Act privilege – a privilege which is inapplicable in this case.  These materials should be produced within 14 days.

Finally, it is contended that Dr. Khan's request for the materials presented to the EMS Committee were not honored. During the Board of Directors hearing, Dr. James Murphy, an oral and maxillofacial surgeon, testified that he was asked by the Chair of the Peer Review Committee to review Dr. Khan's treatment of patients, and that he authored a Report that, according to Dr. Khan, concluded that she did not present an "imminent danger" to patients. This Report, which was apparently sent to the Chair of the Committee, was requested by Dr. Khan,  who contends that her request went unanswered – a charge denied by the defendants. Deciding who is the more accurate reporter, on the present record, is an impossible task. Thus, the Report must be produced. If it is being produced for the second time, so be it.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 8/29/24